## EXHIBIT 1

**(Agreement)**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of this 28th day of December, 2016, by and between Despina, LC, a Utah limited liability company (the "Buyer"), on the one hand, and Alfred T. Giuliano solely in his capacity as chapter 7 Trustee (the "Trustee", acting in such capacity, "Seller" and, together with Buyer, the "Parties") for Nutroganics, Inc., a Delaware corporation ("Nutroganics"); NuStar Manufacturing, LLC ("NuStar"), a Delaware limited liability company and Silverbow Honey Company, Inc. ("Silverbow"), a Delaware corporation (each a "Debtor"collectively, the "Debtors"), the Debtors under Case Nos. 16-12271, 16-12272 and 16-12273 (CSS) (the "Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

## RECITALS

A.    WHEREAS, each Debtor is presently a debtor in proceedings under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, with the cases consolidated for procedural purposes only;

B.    WHEREAS the Debtors heretofore engaged in the business of operating a honey manufacturing, storage and packing facility for sales to retail, bakery, food service, and specialty and industrial businesses (the "Business");

C.    WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell, transfer and assign to Buyer, all Equipment (as defined below) owned by NuStar in accordance with this Agreement and as authorized by sections 105(a), 363 and 365 of the Bankruptcy Code; and

D.    WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and may only be consummated pursuant to a final, non-appealable order entered by the Bankruptcy Court in Debtors' Cases approving the terms of this Agreement.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    <u>Transfer of Assets</u>

1.1    <u>Purchase and Sale of Assets</u>.  On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of Buyer hereunder, and subject to and upon the terms, conditions, disclaimers and acknowledgments hereinafter set forth (including, without limitation, those set forth in Section 7 below), Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller the following assets, wherever located:

1.1.1    Equipment and Personal Property. All of Seller's right, title and interest in and to those items of equipment and tangible personal property owned by NuStar and listed in **Exhibit A** attached to this Agreement and incorporated herein by reference (collectively, the "Equipment"). The Equipment shall expressly exclude any equipment or other tangible property (i) not owned by NuStar (ii) owned by Silverbow and (iii) that is subject to a lease, rental agreement, contract, license or similar arrangement or agreement (a "Contract") where Buyer does not assume the underlying Contract relating to such equipment at the Closing. For the avoidance of doubt, Buyer intends to purchase all equipment and tangible personal property owned by NuStar only and Exhibit A may be amended, modified and supplemented prior to and at the Closing to add or remove equipment and tangible personal property.

1.1.2    Missing Equipment and Personal Property. In the event that an item listed on Exhibit A is discovered by either of the Parties to (i) no longer be in the Seller's possession, custody or control or (ii) cannot be recovered from any third party that may have certain of NuStar's equipment and personal property in its possession, custody or control, such event shall not constitute a breach of any warranty, express or implied, or an event of default under this Agreement.

1.2    Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the Equipment shall be limited to the items identified or described in Section 1.1 above and shall not include (i) those items excluded pursuant to the provisions of Section 1.1 above; (ii) any cash or cash equivalents; (iii) any preference or avoidance claims and actions of the Seller, including, without limitation, any such claims and actions arising under Sections 544, 547, 548, 549, and 550 of the United States Bankruptcy Code; (iv) the Seller's rights under this Agreement and all cash and non-cash consideration payable or deliverable to the Seller pursuant to the terms and provisions hereof; (v) insurance proceeds, claims and causes of action with respect to or arising in connection with any item of tangible or intangible property not acquired by Buyer at the Closing; or (vi) any Contracts of Seller or any claims of Seller thereunder; or (vii) any instrument, receivable, accounts receivable or unbilled costs and fees (and excluding from the Equipment in all events any of the foregoing which may exist between or among the entities comprising Seller) or any cause of action relating or pertaining to the foregoing; or (viii) any files of any present or former employees of Seller and other materials that are subject to third party privacy rights, any attorney-client privileged materials, or any other documents or information that are subject to confidentiality obligations in favor of third parties; or (ix) claims against officers, directors or accountants, including, without limitation, claims under any officer and director liability policies; or (x) any intellectual or intangible property of Seller, whether or not related to the Equipment, or (xi) tort claims of Seller against any third party; or (xii) any of Seller's right, title and interest in or to any supplies, goods, materials, work in process, inventory or stock in trade, wherever located, or (xiii) any other assets not specifically included among those assets defined as the "Equipment" in Section 1.1 above.

1.3    Instruments of Transfer. The sale, assignment, transfer, conveyance and delivery of the Equipment to Buyer shall be made by the Bill of Sale (as defined in Section 3.3.1).

1.4     Competing Transactions.  This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids (each a "Competing Bid") without the consent of Buyer. From the date of this Agreement until the Closing Date or as otherwise directed by the Bankruptcy Court, Seller is permitted to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Buyer and its agents and representatives) in connection with any sale or other disposition of the Equipment. In addition, Seller shall be permitted to respond to any inquiries or offers to purchase all or any part of the Equipment (each, an "Alternative Proposal").

2.     Consideration.

2.1     Purchase Price.

(a) The cash consideration to be paid by Buyer to Seller for the Equipment (the "Purchase Price") shall be $425,000.

(b) The Purchase Price shall be paid as follows:

(i) Buyer has heretofore deposited with Seller the sum of $42,500 (together with all interest which from time to time accrues on such sum, the "Deposit") in immediately available, good funds (funds delivered in this manner are referred to herein as "Good Funds").  At the Closing, the Deposit shall be credited and applied toward payment of the Purchase Price.  The Deposit shall be refundable to Buyer until each of the conditions precedent to the Buyer's obligations to Closing hereunder has been satisfied.  If Seller fails to close the transactions contemplated herein for any reason that is not based on a default by the Buyer, then the Deposit shall be promptly refunded to the Buyer.

(ii) On the Closing Date (as defined in Section 3.2 below), Buyer shall pay and deliver, in Good Funds, the balance of the Purchase Price, together with any other amounts Buyer may be required to pay pursuant to the terms and provisions of Section 3.5 below or any other provision of this Agreement.

3.     Closing Transactions.

3.1     Closing Conference.  The Closing of the transactions provided for herein (the "Closing") shall take place at the offices of Pachulski Stang Ziehl & Jones, LLP, 901 N. Market Street, 17th Floor, Wilmington, Delaware 19801, or such other location as agreed to by the Buyer and Seller.

3.2     Closing Date.  The Closing shall be held on or before January 31, 2017 (the "Closing Date").  In the event the conditions to Closing have not been satisfied or waived by the Closing Date, then any party who is not in default hereunder may terminate this Agreement.  Alternatively, the parties may mutually agree to an extended Closing Date.  Until this Agreement is either terminated or the parties have agreed upon an extended Closing Date, the parties shall diligently continue to work to satisfy all

-3-

conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

3.3    Seller's Deliveries to Buyer at Closing.  On the Closing Date, Seller shall make the following deliveries to Buyer:

3.3.1    A bill of sale, duly executed by Seller, in the form and on the terms of the bill of sale attached hereto as Exhibit "B," pursuant to which Seller transfers to Buyer its interest in the Equipment (the "Bill of Sale").

3.3.2    A certified copy of the Bankruptcy Court's order approving the transaction contemplated hereunder and authorizing the Seller to proceed with such transaction.

3.3.3    Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

3.4    Buyer's Deliveries to Seller at Closing.  On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

3.4.1    That portion of the Purchase Price to be delivered by Buyer directly to Seller at the Closing under Section 2.1 (and Buyer shall concurrently authorize and instruct Seller's counsel to concurrently deliver the Deposit to Seller).

3.4.2    Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

3.5    Prorations.  Current taxes, and other items of expense and income relating to or attributable to the Equipment shall be prorated between Seller and Buyer as of the Closing Date.  All liabilities and obligations due in respect of periods prior to or as of the Closing Date shall be paid in full or otherwise satisfied by Seller and all liabilities and obligations due in respect of periods after the Closing Date shall be paid in full or otherwise satisfied by Buyer.  Buyer shall pay to Seller in cash on the Closing Date the amount of third party deposits, if any, made by Seller relating to the Equipment.

3.6    Sales, Use and Other Taxes.  Any sales, purchases, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Equipment is located, or any subdivision of any such state, which may be payable by reason of the sale of the Equipment under this Agreement or the transactions contemplated herein shall be borne and timely paid by Buyer, with Buyer providing Seller with assurances (reasonably satisfactory to Seller) of such timely payment at or prior to the Closing.

4.  Conditions Precedent to Closing.

4.1     Conditions to Seller's Obligations. Seller's obligation to make the deliveries required of Seller on the Closing Date and to otherwise consummate the transactions contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1   All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

4.1.2   Buyer shall have delivered, or shall be prepared to deliver at the Closing, all cash and other documents required of Buyer to be delivered at the Closing.

4.1.3   Buyer shall have delivered to Seller appropriate evidence of all necessary corporate action by Buyer in connection with the transactions contemplated hereby, including, without limitation: (i) certified copies of resolutions duly adopted by Buyer's directors approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Buyer of this Agreement; and (ii) a certificate as to the incumbency of officers of Buyer executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

4.1.4   No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.5   Buyer shall have substantially performed or tendered performance of each and every covenant on Buyer's part to be performed which, by its terms, is capable of performance before the Closing.

4.2     Conditions to Buyer's Obligations. Buyer's obligation to make the deliveries required of Buyer at the Closing and to otherwise consummate the transactions contemplated herein shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

4.2.1   Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is capable of performance before the Closing.

4.2.2   All representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

4.2.3   Seller shall have executed and be prepared to deliver to Buyer the Bill of Sale.

-5-

4.2.4    Seller shall have delivered, or shall be prepared to deliver at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.5    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.3    Termination.  If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, a party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination.  Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; provided, however, that the consent of a party to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date.

5.  Seller's Representations and Warranties.  Seller hereby makes the following representations and warranties to Buyer:

5.1    Validity of Agreement.    This Agreement shall constitute the valid and binding obligation of Seller enforceable in accordance with its terms.

5.2    Organization, Standing and Power.  Subject to the applicable provisions of bankruptcy law, Seller has all requisite corporate power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

5.3    Authorization of Seller.  The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not:  (i) conflict with or result in a breach of the articles of incorporation or the by-laws of Seller; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound.

6.  Buyer's Warranties and Representations.  In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Seller:

6.1    Validity of Agreement.  All action on the part of Buyer necessary for the authorization, execution, delivery and performance of this Agreement by Buyer, including, but not limited to, the performance of Buyer's obligations hereunder, has been

DOCS_DE:211187.2 31269/001

taken. This Agreement, when executed and delivered by Buyer, shall constitute the valid and binding obligation of Buyer enforceable in accordance with its terms.

6.2    Organization, Standing and Power. Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Utah. Buyer has all requisite corporate power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

6.3    Authorization of Buyer. The execution, delivery and performance of this Agreement and all writings relating hereto by Buyer have been duly and validly authorized. The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

7.    "AS IS" Transaction. Buyer hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Equipment (including, without limitation, that all of the Equipment is in the possession, custody and control of the Seller, the income to be derived or expenses to be incurred in connection with the Equipment, the physical condition of any personal property comprising a part of the Equipment, the physical condition and location of the Equipment, the transferability of the Equipment, the title of the Equipment (or any portion thereof), the merchantability or fitness of the Equipment or any other portion of the Equipment for any particular purpose, or any other matter or thing relating to the Equipment or any portion thereof). Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Equipment. Buyer has conducted, or waived its rights to conduct, an independent inspection and investigation of the title and physical condition of all portions of the Equipment and all such other matters relating to or affecting the Equipment as Buyer deemed necessary or appropriate and, if Buyer acquires the Equipment, Buyer shall do so based solely upon such independent inspections and investigations. Accordingly, Buyer will accept the Equipment at the Closing "AS IS, "WHERE IS," and "WITH ALL FAULTS."

8.    Conduct and Transaction Prior to Closing.

8.1    Access to Records and Properties of Seller. From and after the date of this Agreement until the Closing Date, and subject always to the terms and provisions of any existing confidentiality agreement(s) between Buyer (or any affiliate or principal of Buyer) and Seller, Seller shall afford, or use reasonable efforts to afford, as the case may be, to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, reasonable access for examination or consultation,

-7-

as applicable, at all reasonable times to the Equipment and all records pertaining to the Equipment. Buyer expressly acknowledges that nothing in this Section 8.1 is intended to give rise to any contingency to Buyer's obligations to proceed with the transactions contemplated herein. Buyer shall indemnify, defend (with counsel satisfactory to Seller), protect and save and hold harmless Seller of, from and against any and all claims, liens, demands, debts, liabilities, obligations, losses, damages, actions, causes of action and costs and expenses (including, without limitation, all court costs and all reasonable attorneys' fees) as Seller may suffer or incur by reason of or in connection with any entry onto real property where the Equipment is located by Buyer or any consultant, employee, agent, or other representative of Buyer or any inspection, test, study, inventory or investigation, it being understood that Buyer shall in no event have any right to perform any "invasive" test, inspection or investigation of any portion of the Equipment without first obtaining Seller's express written consent. Buyer's indemnity obligations under this Section 8.1 shall be in addition to any other indemnity obligations of Buyer under this Agreement and shall survive the Closing or any earlier termination of the transactions contemplated by this Agreement.

9. Miscellaneous.

9.1 Damage and Destruction. Seller shall notify Buyer immediately of the occurrence of any damage to or destruction of the Equipment which occurs after the Buyer's examination and inspection of the Equipment and prior to the Closing Date, or the institution or maintenance of any proceedings with respect to the Equipment.

9.2 [Deleted].

9.3 Reasonable Access to Records and Certain Personnel. So long as the Cases are pending, (i) the Buyer shall permit Seller's counsel and other professionals employed in the Cases reasonable access to the financial and other books and records relating to the Equipment (whether in documentary or data form) for the purpose of the continuing administration of the Cases (including, without limitation, the pursuit of any avoidance, preference or similar action and the preparation of income tax returns and other governmental filings), which access shall include (xx) the right of such professionals to copy, at the Seller's expense, such documents and records as they may request in furtherance of the purposes described above, and (yy) Buyer's copying and delivering to the Seller or its professionals such documents or records as they may request, but only to the extent (A) the Seller or its professionals furnishes Buyer with reasonably detailed written descriptions of the materials to be so copied, (B) the Seller reimburses the Buyer for the reasonable costs and expenses thereof, and (C) the requested materials do not consist of privileged information about employees of Buyer who were not previously employees of Seller), and (ii) during regular business hours, Buyer shall provide the Seller and such professionals (at no cost to the Seller) with reasonable access to the Equipment to assist the Seller in the continuing administration of the Cases, provided that such access does not unreasonably interfere with the Buyer's business operations.

9.4    Notices.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by either party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as o the date of mailing.  Mailed notices shall be addressed as set forth below, but each party may change his address by written notice in accordance with this paragraph.

To Seller:    Alfred T. Giuliano, Chapter 7 Trustee
Giuliano, Miller & Company, LLC
140 Bradford Drive
West Berlin, NJ 08091
856-767-3000 ext. 11
Fax 856-767-3500
Email: atgiuliano@giulianomiller.com

With a copy to:    Bradford J. Sandler
Colin R. Robinson
Peter J. Keane
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: bsandler@pszjlaw.com
        crobinson@pszjlaw.com
        pkeane@pszjlaw.com

DOCS_DE:211187.2 31269/001

To Buyer:               Despina, LC
                        141 West 900 North
                        Springville, UT 84663
                        Telephone (801) 787-9686
                        Email: despainalc2016@hotmail.com

With a copy to:         Denver C. Snuffer, Jr.
                        Nelson, Snuffer, Dahle & Poulsen
                        10885 South State Street
                        Sandy, UT 84070
                        Telephone (801) 576-1400
                        Email: denversnuffer@gmail.com

                        William T. Jennings
                        141 West 900 North
                        Springville, UT 84663
                        Telephone (801) 787-9686
                        Email: wtjenningslaw@hotmail.com

9.5    Entire Agreement.  This instrument and the documents to be executed pursuant hereto contain the entire agreement between the parties relating to the sale of the Equipment.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged.

9.6    Modification.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto.

9.7    Closing Date.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

9.8    Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

9.9    Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

9.10    Further Assurances.  Each party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other party hereto for the purpose of giving effect to the transactions contemplated herein or the intentions of the parties with respect thereto.

-10-

9.11    Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

9.12    Brokerage Obligations. The Seller and the Buyer each represent and warrant to the other that, such party has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby. It is agreed that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or the Seller in connection with this transaction, all such claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify, defend (with counsel reasonably satisfactory to the party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

9.13    Payment of Fees and Expenses. Each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

9.14    Survival. The respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

9.15    Assignments. This Agreement shall not be assigned by either party hereto without the prior written consent of the other party hereto.

9.16    Binding Effect. Subject to the provisions of Section 9.15 above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

9.17    Applicable Law. This Agreement shall be governed by and construed in accordance with the internal laws of Delaware, without regard to its choice of law principles.

9.18    Good Faith. All parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

9.19    Construction. In the interpretation and construction of this Agreement, the parties acknowledge that the terms hereof reflect extensive negotiations between the parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either party hereto.

9.20    Counterparts. This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

9.21    Time is of the Essence. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

9.22    Bankruptcy Court Jurisdiction. BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (ii) THE EQUIPMENT AND/OR ASSUMED LIABILITIES, AND BUYER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

9.23    Limited Recourse. Buyer acknowledges that Alfred T. Giuliano. ("AG") is entering into this Agreement solely in his capacity as the chapter 7 trustee and representative of the Seller's bankruptcy estate (and not in his individual or any other capacity) and that in the event of Seller's default hereunder or under any document or instrument executed in furtherance of the transaction contemplated herein, AG shall have no personal liability, it being expressly understood that Buyer's recourse in any such event shall be limited solely to the assets of the Seller's bankruptcy estate.

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and year first above written.

BUYER:

DESPINA, LLC

By: _____

Name: Jamie Ross

Title: Manager


SELLER:

_____

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of the Debtors

-13-

EXHIBIT _____

| | OEM | Model | Serial # | Description |
|---|---|---|---|---|
| 1. | Rexham/ Bartelt | Packager | 3197 | 16 ft Intermittent Motion Horizontal Form Fill and Seal Machine with Smart Date 5 Coder with Color Twisting Operator Controller, Top Mounted Analog Machine Controls, (11) Active Clips on 6 in Centers, Liquid Filling Station, Vacuum Discharge Station, Remcor Chiller, Change Parts Including (4) Single Die Punches, Etc. |
| 2. | Southern | IM717 | 201126 | 25 ft Long Intermittent Motion Horizontal Form Fill and Seal Pouch Machine with Markem Imaje Smart Date 5 Coder, Arm Mounted Operated Controller with Allen-Bradley Panel View Plus 1000 Color Touch Screen Operator Controller, (17) Active Clips on 7 in Centers, Liquid Filling Station, Vacuum Pick Off Discharge Station, Plexiglas Safety Doors with Electrical Lockouts, Remcor Chiller, Change Parts Including (3) Tandem Die Sets, Etc. |
| 3. | Hibar | | | (4) Precision Metering Pumps With Horizontal Punch Machines |
| 4. | 3M | 200A | 50513 | Top and Bottom Case Tape Sealer |
| 5. | 3M | 200A | 50617 | Top and Bottom Tape Sealer with Dual Bottom Grippers |
| 6. | Shanklin | A27A | A98101 | Automatic L-Bar Sealer with a Side Mounted Film Mount, Plexiglas Cover, Digital Heat Controls, Analog Speed Conveyor, Allen-Bradley Operator Controller, Model Selvage Winder S/N S0209D, Including a Shanklin Model T7H S/N T1107901 Shrink Tunnel with 15 in Wide Stainless Steel Belting, 42 in Tunnel with Single Top Mounted Circulation Fan, on Carbon Steel Base with Centers |

| 7. | Linx | 5900 | GD525 | Stainless Steel Programmable Ink Jet Coder on a Carbon Steel Stand |
|----|------|------|-------|-----|
| 8. | Linx | 4900 | | Stainless Steel Programmable Inkjet Coder with Print Head on Adjustable Stand |
| 9. | Linx | 5900 | GS107 | Stainless Steel Programmable Inkjet Coder |
| 10. | Linx | 4900 | | Stainless Steel Programmable Inkjet Coder |
| 11. | Hapman Helix | 400SS | X07402 | Stainless Steel Flexible Screw Conveyor with Ceiling Mounted Motor |
| 12. | Hapman | | X14066 | Stainless Steel Flexible Screw Conveyor with a 3ft x 3 ft Stainless Steel Tapered Bottom Hopper with Lump Breaker Safety Grate |
| 13. | Hapman | | X131788A | Stainless Steel Flexible Screw Conveyor, Stainless Steel Hopper, Ceiling Mounted Fan with Stainless Steel Wash Down Motor, Etc. |
| 14. | Wenzhou Pharmaceutical | HD400 | 153 | Double Cone Multi Direction Movement Mixer with Remote Stainless Steel Electrical Enclosure, Digital Controls |
| 15. | | | | Stainless Steel Fixed Incline Screw Conveyor with 40 in Diameter Stainless Steel Hopper with Lump Breaker Screen and Cover, 6 in diameter Screw, 8 ft Discharge Height and Stainless Steel Open Square Tube Frame with Casters |
| 16. | Capsugel | 8CF | U81046 | Capsugel Stainless Steel Semi Automatic Encapsulator |

| 17. | Busch | AP8BT111 | 111047 | Stainless Steel Rotary Pre-Made Pouch Powder Filler and Sealer Including Infeed Empty Bag Conveyor with Vacuum Pick and Place Unit, 8 Station Rotary Carousel, Bag and Seal Opening Station, Bag Opening and Air Injection Station, Bag Opening Station with Reciprocal Bag Open Retention Jaws; Stainless Steel Powder Filler Station with Automatic Powder Filler, Stainless Steel Hopper, and Dust Collector; Sealing Station, Discharge Conveyor, Stainless Steel Base, Plexiglas Safety Panels, Remote Stainless Steel Electrical Enclosure with Kinko Color Touch Screen Operator Controller and Digital Temperature Controllers. |
| --- | --- | --- | --- | --- |
| 18. | Pneumatic Scale | | | 6-Head In-Line Filler |
| 19. | High Speed / Mettler Toledo | RX2 | 322034 | Conveyorized Checkweigher with 11 in Weigh Table, 5.5 in Wide Belting, Stainless Steel Stand, Color Touch Screen Operator Controller. |
| 20. | Universal | R310 | R3101203A 1072855 | Universal Table Top, Semi Automatic Round Product Label Dispenser |
| 21. | Simplex | AS1 | 8552 | Table Top, Single Piston Semi Automatic Piston Filler |
| 22. | Emerson | LM5022272 | LM5022272 0013 | Super Seal 100 Over the Belt Induction Sealer on an Adjustable Aluminum Stand |
| 23. | Clark | | | (3) 30 in Diameter 72 in High Fiberglass Vertical Fitter / Softener Tanks |
| 24. | Ohaus | Defender 3000 | B434955083 | 4 ft x 4 ft Steel Pallet Scale Platform with 5,000 lb Capacity Remote Display Head |
| 25. | Avery Weigh Tronix | | | 5 ft x 5 ft Stainless Steel Pallet Scale Platform with Avery Weigh Tronics 5,000 lb Capacity Remote Stainless Steel Display Head |

| | | | | |
|---|---|---|---|---|
| 26. | | | | 20 in diameter Rotary Blender, 12 in Wide on a Carbon Steel Stand with Casters |
| 27. | | | | 2 Ton Aluminum Portable Gantry with a CM 2 Ton Electric Hoist, 7 ft Span Bar, Casters, Etc. |
| 28. | | CBS880 | | Stainless Steel Table Top Continuous Bag Sealer |
| 29. | | | | 85 Cu Ft Stainless Steel Double Ribbon Mixer with Custom Stainless Steel Split Cover, Bottom Mounted Motor, Side Mounted Chain Drive, on a Custom Elevated Stainless Steel Platform with a Spare Access and Fiberglass Inserts, 15 hp Motor, Adjustable Gear Reducer, End Bottom Discharge with Pneumatic Valve, Etc. |
| 30. | Wright | 0300 | 0764996 | Stainless Steel Inline Positive Displacement Pump on a Stainless Steel Base with 3 hp motor |
| 31. | | | | 25 ft Jacketed Tube Holding Rack with Heat Exchangers, Valves, Manifold Plates, Centrifugal Pump, Double Door Stainless Steel Electrical Enclosure with Allen-Bradley Panel View Plus 100 Color Touch Screen Operator Controller and Anderson HA300 Rotary Chart Recorder , Miscellaneous Stainless Steel Piping to Filling Machines, Etc. |
| 32. | | | | 500 Gallon Stainless Steel Jacketed Closed Top Flat Bottom Processing Tank with 20 in Manway, Top Entering Motor and Bottom Sweep Agitator |
| 33. | JV Northwest | | | 500 Gallon Stainless Steel Vertical Top Cone Bottom Tank on (4) Stainless Steel Legs with Casters with 20 in Top Manway Top Center Top Entering Agitator |

| 34. | Lee | 500D | 294271 | 500 Gallon psi National Board# 9500 Twin Action Stainless Steel Kettle with (3) Stainless Steel Legs with Leg Extensions and Load Cells with Remote GSE 560 Stainless Steel Digital Tare Display |
|---|---|---|---|---|
| 35. | DCI | | | 1,500 Gallon Stainless Steel Vertical Jacketed Twin Action Mixing Tank with Bottom Agitator, Secondary Agitator, Interior Spray Balls, on (4) Stainless Steel Legs with Leg Extensions |
| 36. | Cherry Burrell | CV | 1000771727 | 1,000 Gallon Stainless Steel Vertical Single Shell Tank Closed Top Dish Bottom 18 in Side Bottom Manway |
| 37. | | | | 500 Gallon Stainless Steel Double Motion Steam Jacketed Kettle on (3) Extended Stainless Steel Legs with Load Cells with Remote GSE560 Stainless Steel Digital Tare Display |
| 38. | Clack | | | (2) 21 in Diameter 62 in high Water Softener Filters |
| 39. | | | | Reverse Osmosis Skid Including Grundfos Pump, FSI Filter, (1) Stainless Steel Filter Tubes, Controls, Carbon Steel Cart, Etc. |
| 40. | | | | Custom Stainless Steel Elevated Operator Platform with Stair Access and Fiberglass Inserts |
| 41. | Mettler Toledo Safeline | | | 8 in Diameter Flow Through Metal Detector on a Stainless Steel Square Tube Open Frame with  Casters |

| 42. | Kaps All | FAPG | 3081 | Stainless Steel Gravity Filler with (6) Shut Off Valves, Top Mounted Stainless Steel Product Hopper with (12) Discharge Outlets, Stainless Steel  Tube Manifold with (13) Outlets, Driving Spout Mechanism, Stainless Steel Base with Product Conveyor and 4.5 in Wide Table Top Belting, Digital Bottle Counter, Digital Fill Controller, Analog Speed on Code Controls, Arm Mounted Poly Electrical Enclosure, Etc. |
| 43. | Label-Aire | | | 2-Sided Pressure Sensitive Labeler with 4-1/2 in x 8 ft Plastic Table Top Belt Conveyor |
| 44. | Sanitron | S2400C | | Ultraviolet Water Purifier |
| 45. | Caps | | | Low Level Pallet Stretch Wrapper with a 7 ft Column |
| 46. | Sullair | 5509A | 200809100059 | Complete Air Compressor System Including 75 hp Rotary Screw Air Compressor with Great Lakes Air Refrigerated Compressed Air Dryer and Carbon Steel Vertical Air Holding Tank, Etc |
| 47. | FS Curtis | SE50 | 01H030001 | Complete Air Compressor System Including 50 hp Rotary Screw Air Compressor with Great Lakes Refrigerated Air Dryer, Inline Filters, Vertical Carbon Steel Air Holding Tank, Etc |
| 48. | | . | | Carbon Steel 16 Chamber Cartridge Dust Collector with Dual Discharge and 24 in Diameter Blower |
| 49. | Sterling | CT480dTank | 41H0917 | Chiller Water Pump Tank on a Carbon Steel Skid with (3) 6 hp Centrifugal Pumps |
| 50. | Sterling | | | Vertical Water Chiller with Fiberglass Cabinet |

| 51. | CCI | | 33828 | 20 ft x 45 ft x 16 ft high Walk in Cooler with (2) Bohn Two Fan Evaporators (2) Drive Thru Doors, Refrigeration, Etc. |
|---|---|---|---|---|
| 52. | Buckhorn | | | (12) Collapsible Poly Totes with Covers |
| 53. | Thermo | Nicolet iS5 | | FT-1R Spectrometer |
| 54. | Caps | | | Low Level Pallet Stretch Wrapper with a 7 ft Column |
| 55. | LZ Company | FFSP500 | 80722 | Stainless Steel Vertical Form Filler and Seal Powder Machine with Rotary Volumetric Filler, Stainless Steel Hopper, Hot Stamp Coder, 8 in Flying Knife Type Sealing Jaws, Stainless Steel Cabinet with Casters with Digital Controllers, Chinese and English Operator Control Identifications, Etc |
| 56. | Ampco | ZP2030DM | CC8209011 | Stainless Steel Positive Displacement Pump with Inline Drive and 3 hp Motor |
| 57. | Ampco | LCR2021518 | CC6049421 | Stainless Steel Centrifugal Pump |
| 58. | Netzsch | | | Stainless Steel Cavity Pump |
| 59. | Linx | 5900 | | Stainless Steel Programmable Ink Jet Coder on a Carbon Steel Stand |
| 60. | Zebra | ZM400 | | Label Printer |
| 61. | Legendary LGR | Phoenix 1200 | | Stainless Steel Desiccant Dehumidifier |
| 62. | KapsAll | Easy-Kap | | (2) Table Top, Semi-Automatic Single Head Capper |
| 63. | Nesteaflex | 275 | | 18 in Wide Expandable Skate Conveyor |
| 64. | | | | 36 in x 120 in Stainless Steel Table with Stainless Steel Legs |
| 65. | | | | Poly Folding Table |
| 66. | | | | 12 ft Mixed Construction Conveyor with 6.5 Rubberized Belting, Carbon Steel legs |
| 67. | Singar / Clamco | | | (2) 18 in Wide Pedestal Impulse Foot Sealer |

| 68. | | | | 3-Compartment Stainless Steel Sink with Faucet and Spray Wand |
| 69. | | | | Electric Pressure Washer |
| 70. | | | | Fork Lift Man Cage |
| 71. | TurboAir | | | Double Door Refrigerator |
| 72. | Whirlpool | | | Refrigerator / Freezer |
| 73. | Ohaus | MB23 | | Digital Moisture Analyzer |
| 74. | Pelouze | | | 5 lb. Capacity Digital Scale |
| 75. | | | | 24 in x 48 in Stainless Steel Table with Wire Shelving Base |
| 76. | | | | 25 in x 60 in Stainless Steel Topped Table |
| 77. | | | | Poly Cart |
| 78. | Whirlpool | | | Top Loading Washing Machine |
| 79. | | | | (20) Pallet Racking |
| 80. | AND | FX120i | | Digital Scale |
| 81. | Milwaukee | | 096444 | Electric Heat Gun |
| 82. | | | | Poly Folding Tables and Chairs |
| 83. | Ohaus | | | Scout Pro Digital Scale |
| 84. | AND | EK-4000i | | 4,000 Gram Digital Scale |
| 85. | | | | 8 ft. Stainless Steel Conveyor with 4.5 in Poly Table Top Belting |
| 86. | Crown | | | Manual Pallet Jacks |
| 87. | | | | 5 ft Stainless Steel Conveyor with 4.5 in Table Top Belting, Motor and Speed Controller |
| 88. | | | | 18 in Diameter Air Circulator |
| 89. | | | | 30 in x 72 in Stainless Steel Topped Table with Carbon Steel Base |
| 90. | | | | Stainless Steel Transfer Conveyor with Dual Side Grippers |

| | | | | |
|---|---|---|---|---|
| 91. | | | | Carbon Steel Shelving Unit |
| 92. | | | | Manual Drum Pump |
| 93. | | | | Pneumatic Mixer with Stainless Steel Shaft and Prop |
| 94. | | | | Poly Cart |
| 95. | | | | Fan |
| 96. | | | | 5 ft Step Ladder |
| 97. | | | | Fan |
| 98. | | | | 30 in x 72 in Stainless Steel Table with Galvanized Shelf, Galvanized Legs |
| 99. | | | | (2) 24 in x 50 in Stainless Steel Topped Tables with Wire Frames and Casters |
| 100. | | | | (1) 24 in x 50 in Stainless Steel Topped Tables with Wire Frames and Casters |
| 101. | | | | Poly Folding Tables |
| 102. | | | | 36 in x 120 in Stainless Steel Topped Tables with Stainless Steel Legs |
| 103. | Avery Weigh Tronix | | | Digital Scale with a 12 in x 13 in Platform |
| 104. | Werner | | | 6 ft Fiberglass Step Ladder |
| 105. | | | | 24 in x 48 in Stainless Steel Top Table with Wire Shelf Base |
| 106. | | | | 24 in x 48 in Stainless Steel Top Table with Wire Shelving Base |
| 107. | | | | Miscellaneous in Janitors Closet Including Miscellaneous Sanitation Equipment, Maids Cart, Poly Buckets with Wringers, Etc |
| 108. | Werner | MT22 | | 22 ft Multi-Position Ladder |
| 109. | Cotterman | | | 450 lb. Capacity 4-Step Mobile Ladder |
| 110. | | | | Miscellaneous In Area Including Poly Folding Table, Sanitation Equipment, Hoses, Etc |

| | | | | |
|---|---|---|---|---|
| 111. | | | | 24 in x 48 in Stainless Steel Top Table with Wire Shelving Base |
| 112. | | | | Miscellaneous Poly Folding Tables |
| 113. | | | | 30 in x 72 in Stainless Steel Table with Galvanized Shelf and Galvanized Legs |
| 114. | | | | Stainless Steel Transfer Plate |
| 115. | Endress Houser | | | Electronic Flow Meter |
| 116. | Dorner | | | 6 ft Aluminum Conveyor with 6 in Wide Belting |
| 117. | | | | 25 ft Mixed Construction Conveyor with 24 in Wide Belting (2) Top Mounted High Velocity Fans, Motor Controller, Etc |
| 118. | | | | 30 in x 93 in Stainless Steel Table with Stainless Steel Legs and Galvanized Shelves |
| 119. | | | | Poly Cart |
| 120. | | | | Miscellaneous Including (3) 6 ft Carbon Steel Heavy Duty Tear Drop Shelving United with Wire Shelving, Stainless Steel Parts, Hoppers, Connector, Clamps, Piping, Valves, Drum Dollies, Etc |
| 121. | Morse | | | Semi Automatic Drum Dolly Lifter Tilter |
| 122. | | | | Carbon Steel Manager Desk |
| 123. | | | | Miscellaneous in Maintenance Shop Including Wood Tables, Vices, Shop Grinder, Cut Off Saw, 20 Ton Shop Press, Power Sprayer, Paint Supplies, Electrical Supplies, Pipe Benders, Carbon Steel Shelving units, Inkjet Coders, Conveyors, Accumulators, Company Owned Hand and Power Tools, Poly Carts, Fans, Recirculators, Etc |

| 124. | | | | Miscellaneous in Sanitation Area Including Chemical Dispensers, Single Drum Spill Pallet, Poly Shelving Units, Hoses, Foamers, Etc |
|------|--|--|--|---|
| 125. | | | | Utility Basin |
| 126. | | | | Miscellaneous Poly Containers |
| 127. | | | | (13) 6 ft Wide Heavy Duty Carbon Steel Tear Drop Shelving Units with Wire Shelving |
| 128. | | | | Poly Carts |
| 129. | | | | 8 ft. Stainless Steel Conveyor with 4.5 in Table Top Belting, Motor and Speed Controller, Etc |
| 130. | | | | Wire Shelving Unit with Casters |
| 131. | | | | Miscellaneous Poly Top Folding Tables |
| 132. | | | | Two Step Stepladder |
| 133. | | | | Fans and Air Circulators |
| 134. | | | | Carbon Steel Manager Stand |
| 135. | GSE | 550 | | 5 ft x 4 ft Carbon Steel Pallet Scale Platform with a Remote Stainless Steel Digital Tare Display Head |
| 136. | | | | Poly Tilt Tote |
| 137. | | | | 180 Degree Stainless Steel Hand Sink with Foot Controls |
| 138. | Kewaumee | | | 48 in Wide Laboratory Fume Hood with Pull Down Glass Door and Wood Cabinet Base |
| 139. | AND | HR120 | | Digital Balance with Enclosure |
| 140. | Benchmark | | | Stirrer Hotplate |
| 141. | Metler Toledo | | | Ph Meter with Probe |

| | | | | |
|---|---|---|---|---|
| 142. | | | | Miscellaneous in the Lab Including Hand Mixers, Wood Laminate Laboratory Benches with Laminate Tops, Glassware, Labware, Incubators, Carbon Steel Shelving Units, Etc |
| 143. | | | | Stainless Steel Cart |
| 144. | Fischer Scientific | | | Isotemp Oven |
| 145. | Boekel | 133000 | | Incubator |
| 146. | | | | Miscellaneous Dollies |
| 147. | Datamax Oneil | | | Pressure Sensitive Label Printer |
| 148. | Sellers | 77 Commodore | 101406 | 50 hp Natural Gas Boiler System with 1,675,000 BTU per Hour Output, Feed Tank, Pumps, Piping, Valves, Etc |
| 149. | GE | | | Commercial Front Loading Gas Dryer |
| 150. | Maytag | | | Top Loading Washing Machine |
| 151. | Bartelt | Packager | | 16 ft Intermittent Motion Horizontal Form Fill and Seal Powder Machine with analog Controls (Incomplete - Did not inspect) |
| 152. | Bartelt | Packager | | 20 ft Intermittent Motion Horizontal Form Fill and Seal Powder Machine with analog Controls |
| 153. | MidWest Pacific | | | 12 in Wide Pedestal Impulse Foot Sealer |
| 154. | AND | GF200 | | 200 gram Capacity Digital Scale |
| 155. | Clawson | | 41092BM1 | 275 lb. Capacity Stainless Steel Stackable Tote |
| 156. | | | | Miscellaneous Steamers |
| 157. | Ohaus | Navigator | | Digital Scale |
| 158. | Tonita | 1458N | | Digital Scale |
| 159. | Z-Automation | CH9401 | | Hot Glue Horizontal Cartoner with Pouch Collator and Nordson Hot Glue Unit |

| 160. | Drexel | SL44 | 44503A0198 | 4,000 lb. Capacity Electric Forklift 240 in maximum Forklift Height Rollover Protection Battery and Charter |
|---|---|---|---|---|
| 161. | Bartlett | IM 9-12 | RH2014423, 3588 | Used with the following Equipment 1) Preheat Side Seal Rocker Assembly, 2) Side Seal Cool Rocker Assembly, 3) Ferguson Bag Clamp Chain Indexer, 4) Rapid Change Seal Driver Assembly, 5) Guard Door System, 6) All Other Standard Equipment Including Bottom, Side, and Top Seal, 7) Allen Bradley Micrologic PLC, Electrocam PLS, 8) (1) Bartlett Servo Auger Filler with One Set of Tooling, 9) Vacuum Generators (New), 10) All Other Standard Equipment, 11) Nicker Knife, 12) Conveyor, 13) Top Seal Cooling, 14) Water Chiller, All of Which is the Subject to an Equipment Lease between HMC Products, Inc., as Lessor and Nustar Manufacturing, LLC, as Lessee |
| 162. | ACS | IM7-14 | | Horizontal FFS Machine with Die Cutter, chiller and Seal Bars, but no Filling Unit |
| 163. | Nobles | Speed Scrub | | Riding Electric Floor Cleaner with Battery and Charter |
| 164. | Ampco | LCR3225221 | CC6049411 | 7.5 hp Stainless Steel Centrifugal Pump |
| 165. | Ampco | ZP1060SO | CC7968512 | 7.5 hp Stainless Steel Positive Displacement Pump |
| 166. | Ampco | ZP1060SO | CC7968511 | Stainless Steel Positive Placement Pump Inline Drive and 7 ½ hp Motor with Motor Controller and Power Cord |
| 167. | Admix | DS425 | | Stainless Steel Dynashear High Shear Inline Mixer with 7.5 hp Stainless Steel Wash-down Motor on a Stainless Steel Base with Casters |
| 168. | Groen | TA100 | 35531 | 100 Gallon Stainless Steel 80 psi National Board 35531 Steam Jacketed Twin Action Mixing Kettle with (3) Stainless Steel Legs Stainless Steel Bridge Split Stainless Steel Covers |

| 169. | Sterling | M2B2012 C | 39D0257 | Electric Liquid Temperature Controller |
|---|---|---|---|---|
| 170. | Schweitzers | | 981395 | 100 Gallon Stainless Steel Vertical Closed Top Slant Bottom Tank 20 in Top Manway Pneumatic Discharge Valve; Etc |
| 171. | Admix | FF425 | RO002 | Stainless Steel Fastfeed Powder Induction and Dispersion Skid with Stainless Steel Hopper, Stainless Steel Pump, Stainless Steel Dynashear Mill, Stainless Steel Cart with Casters |
| 172. | Packaging Systems | 62MSSCanWarmer | 13942 | 17 ft long Stainless Steel Spray Tunnel (used for cooling) with 72 in Wide Belting, Rollers, Pumps, Pipes |
| 173. | | | | 6 ft Aluminum Conveyor on Adjustable Legs with 12 in Wide Belting and Top Mounted Motorized Wheel with Speed Controller |
| 174. | Dorner | | | 6 ft Aluminum Conveyor with 5 in Wide Belting |
| 175. | | | | 15 ft Galvanized Conveyor with 29 in Bed 24 in Belting Motor and Speed Control |
| 176. | Viking Masek | ST560 | 2546 | Stainless Steel Vertical (10) Lane Stick Form Fill and Seal Machine with Top Mounted Agitated Hopper, (1) Back Sealers, 22 in Wide Sealing Jaw, Siemens Color Touch Screen Operator Controller, Tethered Operator Auxiliary Controller, Film Splitter, Markem Imaje Model 9232 S/N FR12012060 Color Touch Screen Programmable Ink Jet Coder with Stainless Steel Cart and Machine Mounted Traveling Print Head Mechanism, Plexiglas Safety Doors, Poly Parts Cart with a Change of Parts, Etc |
| 177. | | | | Package Integrity / Leak Tester with Aluminum Pot, Plexiglas Lid with Seal, Mastercool 6CFM Vacuum Pump |

| 178. | Ohaus | T31P Series 3000 | | 3,000 Series Digital Scale with 17 in x 22 in Platform and Poly Digital Display Head |
|------|-------|------------------|--|------|
| 179. | Sanko | SAMFC80 | 21616 | 2-Head Vertical Form Fill and Seal Stick Machine with Film Slitter, Embosser, Top Mounted Rotary Volumetric Filler, Stainless Steel Hopper, Dual Back Sealers, 8 in Wide Sealing Jaw, Digital Heat Controllers, Digital Operator Controllers, Carbon Steel Cabinet with Plexiglas Safety Panels |
| 180. | CVC | | | Automatic Conveyorized Label Applicator with Single Labeling Head, Wrap Station, Operator Controller, 6 ft Adjustable Stainless Steel Frame with 4.5 in Poly Table Top Belting |
| 181. | Image Filler | | | Stainless Steel Pedestal Mounted Powder Filler with Stainless Steel Hopper and Flow Powder Attachments |
| 182. | Linx | 5900 | GQ173 | Stainless Steel Programmable Inkjet Coder |
| 183. | | | | 12 ft Aluminum Conveyor with 6 in Wide Rubberized Belting Motor and Speed Controller |
| 184. | Linx | 5900 | GQ661 | Stainless Steel Programmable Inkjet Coder |
| 185. | | | | 8 in Stainless Steel Double Diaphragm Pneumatic Pump |
| 186. | Dorner | | | 6 ft Aluminum Conveyor with 8 in wide Sanitary Belting |

Exhibit "B"

BILL OF SALE

Pursuant to Section 3.3.1 of that certain Asset Purchase Agreement dated as of December __, 2016 (the "Agreement"), by and between Despina, LLC (the "Buyer"), on the one hand, and Alfred T. Giuliano solely in his capacity as chapter 7 Trustee (the "Trustee", acting in such capacity, "Seller" and, together with Buyer, the "Parties") for Nutroganics, Inc., a Delaware corporation ("Nutroganics"); NuStar Manufacturing, LLC ("NuStar"), a Delaware limited liability company and Silverbow Honey Company, Inc. ("Silverbow"), a Delaware corporation (each a "Debtor"collectively, the "Debtors") (the "Seller"), on the other hand, and for good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, to the extent of its interest therein, the Seller hereby sells, transfers, assigns and delivers to Buyer all of its right, title and interest in and to the Equipment.

Except for terms specifically defined in this Bill of Sale, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Agreement.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 1.2 of the Agreement, the acknowledgement and disclaimer set forth in Section 7 of the Agreement and the provisions of Section 9.23 thereof).

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of the [_____] day of [_____], 2016.

BUYER:

DESPINA, LLC

By:_____
Name: Jami Ross
Title:  Manager


SELLER:

_____
Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of the Debtors

-14-